United States District Court
Southern District of Texas
**ENTERED**
August 15, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HILDA PATRICIA MANDUJANO, Petitioner | § § § | |
| v. | § § | Civil Action No. 1:19-cv-068 |
| ROBERT M. COWAN, ET AL., Respondents | § § § | |

# MAGISTRATE JUDGE'S
# REPORT AND RECOMMENDATION

Pending before the Court is Hilda Patricia Mandujano's "Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" (hereinafter, referred to as Mandujano's "Petition"). Dkt. No. 4. Mandujano's Petition names the following individuals and entities as defendants: (1) Robert M. Cowan, Director of the United States Citizen and Immigration Services ("USCIS"); (2) Norma A. Limon, Harlingen Field Office Director of the USCIS; (3) Kevin McAleenan, Acting Director of the Department of Homeland Security; (4) William P. Barr, United States Attorney General; and (5) the United States of America (hereinafter, "Respondents"). *Id.* at 1-2. Respondents have filed a Motion to Dismiss Mandujano's Petition pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter, Respondents' "Motion" or "Motion to Dismiss"). Dkt. No. 6. For the reasons provided below, it is recommended that the Court: (1) **GRANT** Respondents' Motion to Dismiss; (2) **DISMISS** Mandujano's Petition without prejudice as moot; and (3) **DIRECT** the Clerk of the Court to close this case.

## I.  Statement of the Case

Mandujano is a Mexican National who has resided in Texas since approximately 2000.  Dkt. No. 4 at 2; Dkt. No. 6 at 1.  Mandujano asserts that this Court has jurisdiction over her Petition pursuant to 28 U.S.C. §§ 1331, 1346(a)(2), 2201, 2241, and 5 U.S.C. § 702, *et seq*.  Dkt. No. 4 at 2 ("Jurisdiction lies under 28 U.S.C. §§ 1331 (federal question), 1346(a)(2) (actions against officers of the United States, 2201 et seq, (the Declaratory Judgment Act), and 2241 (habeas corpus), with 5 U.S.C. §702 et seq, (the Administrative Procedure Act)") (errors in original).  Her Petition contests the USCIS's denial of her March 2018 application for an employment authorization document ("EAD").  *Id*. at 1-2.  She claims that the denial of this application (hereinafter, Mandujano's "March EAD Application") has caused her and her family substantial hardship because she is no longer able to legally work or travel within the U.S.  *Id*.  More specifically, she makes the following assertions and requests for relief:

1.  On February 16, 2012, she filed an I-360 petition as an abused spouse of a United States Citizen.  The USCIS granted her petition.  Dkt. No. 4 at 3.  On October 20, 2014, she filed an application to adjust her status to that of a lawful permanent resident ("LPR") as the parent of a United States Citizen.  *Id*.  This application was denied on March 27, 2015, because of past arrests and the previous cancellation of her visa.  *Id*. ("[O]n January 6, 2001, her visa was cancelled at the Brownsville Port of entry.  And records reveal that she had been arrested three times by Border Patrol for being unlawfully in the United States.  And therefore, she was

inadmissible because she was not able to prove that her unlawful presence was connected to her abuser US citizen.") (errors in original).

2. On April 6, 2015, she requested a Notice to Appear ("NTA") before an immigration judge to challenge the denial of her application to adjust status. Dkt. No. 4 at 3. After requesting the NTA, she filed her March EAD Application. The USCIS denied her March EAD Application on August 7, 2018. *Id.*

3. Section 247a.12(c)(9) of Title 8 allows for the approval of EAD applications during "any period when an administrative appeal or judicial review of an application [for adjustment of status] . . . is pending[.]" Dkt. No. 4 at 3. Pursuant to § 247a.12(c)(9), then, Mandujano "is eligible for an EAD when she properly filed her application for adjustment of status, until such time as she is either finally order removed, or granted lawful permanent resident status." *Id.* at 4 (errors in original). Respondents have erroneously reinterpreted § 247a.12(c)(9). This reinterpretation has resulted in the wrongful denial of Mandujano's March EAD Application. *Id.* at 4-5.

4. Mandujano cannot force the USCIS to initiate removal proceedings. Dkt. No. 4 at 3. As a result, she cannot renew her EAD or her application to adjust status. If the USCIS would issue an NTA so that she could appear before an immigration judge, Mandujano believes that she would be able to show that she is eligible for cancellation of removal and LPR status. *Id.*

5. The Court should issue a declaratory judgment, declaring Mandujano eligible for an EAD under 8 C.F.R. § 247a.12(c)(9). Dkt. No. 4 at 6. This judgment

should declare her eligible from the time she filed for an adjustment of status until she is either granted LPR status or ordered removed. *Id.*

6. The Court should issue an injunction enjoining Respondents "from refusing to reopen, *sua sponte*, and grant" her EAD application. Dkt. No. 4 at 6.

7. The Court should issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 because the denial of Mandujano's March EAD Application has placed significant restrictions on her liberty not shared by the populace at large. Dkt. No. 4 at 5.

8. The Court should review the denial of her March EAD Application because it is a "final agency action," reviewable under the Administrative Procedure Act ("APA"). Dkt. No. 4 at 5.

In their Motion to Dismiss, Respondents contend that this Court lacks jurisdiction over Mandujano's Petition on the grounds of mootness. Dkt. No. 6 at 4. More specifically, Respondents contend as follows:

1. Mandujano's March EAD Application was denied, but her EAD application under a different eligibility category was granted *before* she filed her Petition in this Court. Dkt. No. 6 at 4. As a result, she has possessed an EAD since October 4, 2018, and that EAD will remain in effect until October 3, 2019. *Id*. at 2 ("Prior to commencing the instant litigation, on October 4, 2018, Plaintiff obtained an EAD based on an EAD application filed under a different eligibility category. Plaintiff's EAD is current through October 3, 2019.").

2. Even after October 3, 2019, Mandujano may still have an active EAD because, on June 10, 2019, Mandujano applied to renew her work authorization for

an additional year "under the same category as her current EAD." Dkt. No. 6 at 2. That application is still pending before the USCIS. *Id*.

  3. USCIS has also granted Mandujano's request for an NTA. Dkt. No. 6 at 3 (noting that the USCIS granted Mandujano's request for an NTA on June 19, 2019). As she is set to appear before an immigration judge on October 15, 2019, Mandujano still has an avenue to pursue LPR status. *Id*. at 1, 10. Because she has already obtained an NTA and an effective EAD, Mandujano has presented this Court with no live case or controversy. *Id*. at 5-6.

  Respondents additionally assert that this Court lacks jurisdiction over Mandujano's habeas claim because she has not been in custody at any relevant time. Dkt. No. 6 at 7. They also contend that Mandujano's Administrative Procedures Act claim fails because she "cannot meet the threshold standard that she was 'adversely affected or aggrieved by agency action' for the straight-forward reason that her most recent EAD application was approved[.]" *Id*. at 11 (citation omitted). Finally, Respondents argue that Mandujano's claim for declaratory and injunctive relief is "cognizable only if she ha[s] another jurisdictional basis to support her cause of action[,]" which she does not. *Id*. at 14.

  Mandujano had until July 29, 2019, to file a response to Respondent's Motion to Dismiss. *See* Rule 7.3 of the Local Rules of the United States District Court for the Southern District of Texas ("Opposed motions will be submitted to the judge 21 days from filing without notice from the clerk and without appearance by counsel."). She has not done so, or otherwise contradicted the factual allegations made in

Respondent's Motion. A failure to respond to a motion in this District is construed as "a representation of no opposition." Rule 7.4 of the Local Rules of the United States District Court for the Southern District of Texas.

## II. Legal Standards

Article III of the U.S. Constitution restricts the power of federal courts, limiting them to presiding over cases and controversies. *Chafin v. Chafin*, 568 U.S. 165, 171 (2013). As a result, federal courts lack the power to decide questions that cannot affect the rights of the litigants before them. *Id.* Federal courts similarly lack the power to provide legal opinions regarding hypothetical facts. *Id.* For jurisdiction over a lawsuit to lie in federal court, a live dispute must exist when the suit is filed, and the parties must continue to have a personal stake in the suit's outcome. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990). If no case or controversy exists when a suit is filed, or if the parties cease to have a stake in the suit's outcome, a federal court must dismiss the suit on the grounds of mootness. *Chafin v. Chafin*, 568 U.S. 165, 172.

The party asserting federal court jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

> When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted)

>  (citing *Paterson [v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)]). If, however, the defendant supports the motion with affidavits, testimony, or other evidentiary materials, then the attack is "factual" and the burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence. *Id.*

*MacKenzie v. Castro*, No. 3:15-CV-0752-D, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016) (citations omitted).

### III. Discussion

Mandujano filed her instant Petition on April 28, 2019. Dkt. No. 1. Respondents state that, well before this date, on October 4, 2018, Mandujano obtained an EAD that will remain in effect through October 3, 2019. Dkt. No. 6 at 2. Respondents do not support this statement with any evidence. *See id.* Nevertheless, it is Mandujano's burden to show that federal jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161. Mandujano has not responded to Respondents' Motion, or otherwise contradicted their factual allegations. Accordingly, she has failed to show that USCIS's denial of her March EAD Application is currently restricting her right to work and travel freely in the U.S. As she has also failed to rebut Respondents' claim that an NTA has issued, she has not presented a request for relief that this Court can grant.

Because Mandujano's claims all concern the USCIS's denial of her March EAD Application, or its failure to issue an NTA, all her claims are moot. Because her claims are moot, this Court lacks subject matter jurisdiction over her Petition. *See Chafin v. Chafin*, 568 U.S. 165 (opining that, if no case or controversy exists when a

suit is filed, or if the parties cease to have a stake in the suit's outcome, a federal court must dismiss the suit on the grounds of mootness).  Further, even if this were not the case, Respondents' additional above-summarized arguments correctly provide ancillary grounds for dismissal under Rule 12(b)(1).  Mandujano's Petition should, therefore, be dismissed.  *See* FED. R. CIV. P. 12(b)(1).

### IV. Recommendation

It is recommended that the Court: (1) **GRANT** Respondents' Motion to Dismiss; (2) **DISMISS** Mandujano's Petition without prejudice as moot; and, (3) **DIRECT** the Clerk of the Court to close this case.

### V. Notice to the Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 15th day of August, 2019.

_____
Ignacio Torteya, III
United States Magistrate Judge